**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **BRET WOODALL,** *individually and on behalf of all others similarly situated,* | |
| Plaintiff, | **Case No.: 3:24-cv-00424-MOC-SCR** |
| v. | |
| **OCTAPHARMA PLASMA, INC.,** | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................1

II.   BACKGROUND ..................................................................2

    A.    History of the Litigation .................................................2

    B.    Settlement Negotiations ..................................................4

    C.    Terms of the Settlement .................................................5

        1.    The Settlement Class .............................................5

        2.    The Settlement Benefits ........................................5

            a.    Cash Payment A - Documented Losses .............6

            b.    Cash Payment B - Flat Cash Payment ................6

            c.    Credit Monitoring ...........................................6

            d.    California Statutory Payment ...........................7

        3.    Administration of Notice and Claims ........................7

        4.    Exclusions and Objections ......................................8

        5.    Attorneys' Fees, Expenses, and Service Awards
            to Class Representatives ........................................10

    D.    Final Approval Hearing .................................................10

III.  LEGAL STANDARDS FOR PRELIMINARY APPROVAL,
    CONDITIONAL CLASS CERTIFICATION, AND APPROVAL
    OF THE NOTICE FORM ................................................ 10

    A.    Preliminary Approval of Settlement .........................10

    B.    Conditional Class Certification .................................10

    C.    Notice Form Approval .................................................. 13

IV.   ARGUMENT ....................................................................14

    A.    The Class Was Adequately Represented .................................14

    B.    The Proposed Settlement Was Negotiated at Arm's Length ..................15

    C.    The Relief is Fair, Reasonable, and Adequate ......................................15

        1.    The Cost, Risk, and Delay of Trial and Appeal ...........................16

2. The Method of Distributing Relief is Effective ............................17

3. The Terms Relating to Attorney's Fees Are Reasonable..............17

4. Any Agreement Required to be Identified Under Rule 23(e)(3) ..18

5. The Proposed Settlement Treats Class Members Equally ..........18

D. The Class Should Be Conditionally Certified for Settlement Purposes .19

1. The Settlement Class Satisfies the Requirements of Rule 23(a) ..19

    a. Numerosity ..................................................................20

    b. Commonality ................................................................20

    c. Typicality ....................................................................21

    d. Adequate Representation ...................................................22

    e. Ascertainability ............................................................23

2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)...................................................................24

    a. Common Questions of Law and Fact Predominate .........24

    b. Class Resolution of this Action is Superior to Other Methods    of  Adjudication .................................25

V. PLAINTIFFS' NOTICE FORM AND PLAN SATISFY THE REQUIREMENTS OF THIS COURT....................................................... 25

VI. CONCLUSION ........................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Abubaker v. Dominion Dental USA, Inc.*,
  No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ........................ 19, 21

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 13, 19, 24, 25

*Beaulieu v. EQ Indus. Servs., Inc.*,
  No. 5:06-CV-00400BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ............ 21, 22, 24

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ...................................................................................... 14

*Covarrubias v. Capt. Charlie's Seafood, Inc.*,
  No. 2:10-CV-10-F, 2011 WL 2690531 (E.D.N.C. July 6, 2011) .................................. 12

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ........................................................................................... 22

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ......................................................................................................... 13

*EQT Production Co. v. Adair*,
  764 F.3d 247 (4th Cir. 2014) ........................................................................................... 23

*Fisher v. Va. Elec. & Power Co.*,
  217 F.R.D. 201 (E.D. Va. 2003) ................................................................................. 13, 20

*Gamas v. Scott Farms, Inc.*,
  No. 5:13-CV-447-FL, 2014 WL 12546373 (E.D.N.C. Dec. 24, 2014) ........................ 13

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .............. 16

*Hall v. Higher One Machines, Inc.*,
  No. 5-15-CV-670-F, 2016 WL 5416582 (E.D.N.C. Sept. 26, 2016) ............................ 12

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

855 F. Supp. 825 (E.D.N.C. 1994) ................................................................. 11

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
  No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019) ..................................... 19

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ....................................................... 19, 21, 25

*In re Capital One Consumer Data Sec. Breach Litig.*,
  No. 1:19md2915, (E.D. Va. Feb. 7, 2022) ..................................................... 19

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ............................................................. 11, 12

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*,
  No. 1:15-MD-2627-AJT/TRJ, 2020 WL 5757504 (E.D. Va. Sept. 4, 2020) ............... 18

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices*
  *& Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ....................................... 14

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ...................................................... 11

*In re NeuStar*, 2015 WL 5674798 .......................................................... 13, 15

*In re Peanut Farmers Antiturst Litig.*,
  No. 2:19-CV-00463, 2021 WL 3174247 (ED. Va. July 27, 2021) ............................. 17

*In re Red Hat, Inc. Sec. Litig.*,
  261 F.R.D. 83 (E.D.N.C. 2009) ............................................................ 24

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
  No. 1:08cv1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ................................ 11

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ............................................................. 23

*Matthews v. Cloud 10 Corp.*,
  No. 14-00646, 2015 U.S. Dist. LEXIS 114586, (W.D.N.C. Aug. 27, 2015) .............. 11

*McLaurin v. Prestage Foods, Inc.*,
  271 F.R.D. 465 (E.D.N.C. 2010) .......................................................... 24

- v -

*Nelson v. Mead Johnson & Johnson Co.*,
484 F. App'x 429 (11th Cir. 2012) ............................................................... 15

*Olvera-Morales v. Intern. Labor Mgmt Corp.*,
246 F.R.D. 250 (M.D.N.C. 2007) ................................................................. 22

*Rodger v. Elec. Data Sys. Corp.*,
160 F.R.D. 532 (E.D.N.C. 1995) ............................................................ 20, 22

*Sanchez-Rodriguez v. Jackson's Farming Co. of Autryville*,
No. 7:16-CV-28-D, 2017 WL 396667 (E.D.N.C. Jan. 27, 2017)................... 20

*Six v. LoanCare, LLC*, No. 5:21-cv-451,
2022 WL 16747291 (S.D. W. Va. Nov. 7, 2022) ........................................... 7

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) ...................................................................... 22

*Wal-Mart Stores, Inc., v. Dukes*,
564 U.S. 338 (2011)..................................................................................... 20

*Watkins v. Spector*,
No. 21-638, 142 S.Ct. (U.S. 2022) .............................................................. 19

**Statues**

28 U.S.C. § 1715 ............................................................................................ 10

**Rules**

Fed. R. Civ. P. 23.................................................8, 10, 11, 13, 14, 18, 19, 20, 21, 24, 25

Case 3:24-cv-00424-MOC-SCR     Document 43-1     Filed 07/22/25     Page 6 of 32

## I. INTRODUCTION

This class action arises out of Defendant Octapharma Plasma, Inc' ("Octapharma" or "Defendant") alleged failure to safeguard the personal information that it maintained regarding Plaintiffs Kevin David Allport, Judy Kay Bishop, Karoline McKay, Labri Melzer, Timothy Taylor and Jacob Borrero, and Randall Sharp (collectively, "Plaintiffs," and, together with Defendant, the "Parties") and Settlement Class Members. Plaintiffs allege that Octapharma failed to reasonably secure, monitor, and maintain their and Class Members' Private Information, including names, addresses, Social Security numbers, dates of birth, laboratory data, financial data, employee data, and business data. As a result, Plaintiffs allege that they suffered present injury and damages in the form of identity theft, loss of value of their personal information, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the unauthorized access, exfiltration, and subsequent criminal misuse of their sensitive and highly personal information.

While Defendant denies the Plaintiffs' allegations, the Parties determined that they desired to settle the Action,[1] and thus avoid the expense, risk, exposure, inconvenience, uncertainty, and distraction of continued litigation relating to this Data Incident. As further explained herein, the terms of the proposed settlement are fair, adequate, and reasonable; the proposed Settlement Class meets all of the requirements for certification for sole

---

[1] Capitalized terms used herein have the meaning attributed to them in the Settlement Agreement ("S.A.") filed as Exhibit 1 to this memorandum.

1

purposes of settlement, and the proposed notice program provides the best practicable notice under the circumstances and comports with Fed. R. Civ. P 23(c)(2). Accordingly, Plaintiffs respectfully request that the Court take the first step in the approval process and enter the Parties' proposed Preliminary Approval Order, which: (1) grants preliminary approval of the proposed Settlement; (2) certifies the Settlement Class contemplated by the Parties' Settlement Agreement; (3) orders that the Parties' proposed Notice be sent to the Settlement Class; and (4) schedules a final approval hearing to consider final approval of the proposed Settlement, as well as approval of attorneys' fees, costs, and service awards to the Class Representatives.[2]

## II.   BACKGROUND

### A.  History of the Litigation

On or about April 17, 2024, Defendant detected suspicious activity on its IT systems.   In response, Defendant launched an investigation which revealed that an unauthorized party had gained unauthorized access to personal information related to certain personal information including but not limited to names, dates of birth, Social Security numbers, health information or donor eligibility information. Following Defendant's public announcements, on April 26, 2024, plaintiff, Bret Woodall, filed a complaint against Defendant asserting several causes of action related to its role in the Data

---

[2]Plaintiffs will file a separate application for attorneys' fees and the reimbursement of litigation costs and expenses, as well as for service payments to the Class Representatives, along with supporting declarations and reports, contemporaneously with the motion seeking final approval of the settlement. Plaintiffs have proposed a schedule for the filing of each of these motions in the Proposed Order.

Incident. Subsequently, two additional lawsuits were filed against Defendant as a result of the Data Incident, and on May 6, 2024, plaintiff Bret Woodall filed a Motion to Consolidate the related actions. [ECF No. 4]. Thereafter, two additional related actions were filed and on May 14, 2024, plaintiff Woodall filed an Amended Motion to Consolidate in order to include all subsequently filed actions. [ECF No. 5]. On July 10, 2024, the Court granted plaintiff Woodall's motion, consolidating the related cases into the instant matter. [ECF No. 21].

On August 9, 2024, Plaintiffs filed an Unopposed Motion to Appoint Counsel Jean S. Martin and Daniel Srourian as Interim Co-Lead Counsel, and Jeff Ostrow, Raina Borrelli, John Nelson, and Beena Mallya McDonald as Executive Committee Members. [ECF No. 31]. The Court granted the motion on August 16, 2024. [ECF No. 32]. On about August 26, 2024, Defendant began sending 272,794[3] notices to individuals whose personal information may have been impacted by the Data Incident.

On October 8, 2024, Plaintiffs[4] filed a Consolidated Complaint in this Action alleging violation of the North Carolina Unfair and Deceptive Trade Practices Act, negligence, breach of fiduciary duty, breach of implied contract, unjust enrichment, breach of confidence, invasion of privacy, declaratory judgment, violation of the California Customer Records Act, violation of the California Unfair Competition Law, violation of the California Consumer Legal Remedies Act, Violation of California Consumer Privacy

---

[3] This includes an initial wave of 271,655 notices, plus a subsequent wave of 1,139 notices sent following additional investigation.

[4] Bret Woodall was not named as a plaintiff in the Consolidated Complaint.

Act, Violation of the Confidentiality of Medical Information Act, Violation of the Oregon Consumer Identity Theft Protection Act, Violation of the Oregon Unlawful Trade Practices Act, Violation of the Illinois Personal Information Protection Act, Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and Violation of the Illinois Uniform Deceptive Trade Practices Act. [ECF No. 33]. On November 6, 2024, Missouri Plaintiff Randall Sharp filed a related action. *R.S. v. Octapharma Plasma, Inc.*, Case 5:24-cv-06145 (E.D. Mo.) He subsequently agreed to dismiss that action and join in this Settlement.

## B. Settlement Negotiations

Shortly after the consolidated complaint was filed the Parties determined that early resolution could be beneficial to both sides. The Parties engaged in months of hard-fought arm's length negotiations. These negotiations included the exchange of information including the nature and cause of the Data Incident, the number and geographic location of victims impacted, and the specific type of information breached. Plaintiffs also retained an expert to help inform their negotiations in this matter. Declaration of Class Counsel in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Dec."), ¶ 13 (attached as **Exhibit 2**). In January 2025, the Parties agreed to resolve all matters pertaining to, arising from, or associated with this Action, including all claims Plaintiffs and Settlement Class Members have or may have had against Octapharma and related persons and entities relating to the Data Incident. Throughout their negotiations, the Parties engaged in an extensive evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risks and uncertainties of continued litigation. *Id.*

¶ 15. The Parties diligently negotiated, drafted, and finalized the Settlement Agreement, notice forms, and claims process. *See Id.*, ¶ 14.

### C. Terms of the Settlement

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a $2,550,000 non-reversionary Settlement Fund.

#### 1. The Settlement Class

The Settlement Class is defined as "all living individuals residing in the United States who were sent a notice by Defendant that their Private Information may have been impacted in the Data Incident." S.A. ¶ 64. The Settlement also creates a California Settlement Subclass, which means "the Settlement Class Members who were residing in California as of April 17, 2024." *Id.* ¶ 18. Excluded from the Class are all persons who are: (a) employees, directors, officers, and agents of Defendant; and (b) the Judge assigned to the Action, that Judge's immediate family, and Court staff. For the avoidance of doubt, California Settlement Subclass Members are also members of the Settlement Class.

#### 2. The Settlement Benefits

Pursuant to the Settlement, Octapharma will establish a $2,550,000 non-reversionary Settlement Fund. *Id.*, ¶ 68. As described in detail below Settlement Class Members ("Class Members") will have an opportunity to submit a claim for documented losses or a *pro rata* share of the Settlement Fund, as well as for credit monitoring services. *Id.*, ¶ 74. California Settlement Class Members will also have the opportunity to claim an additional California Statutory Payment. *Id.* ¶ 74(c). To submit a claim, a Class Member need only submit a Claim Form before the Claim Deadline.

5

### a. *Cash Payment A – Documented Losses*

Settlement Class Members may submit a Claim for a Cash Payment under this section for up to $5,000.00 per Settlement Class Member for documented losses related to the Data Incident. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected. *Id.* ¶ 74(a).

### b. *Cash Payment B – Flat Cash Payment*

As an alternative to Cash Payment A – Documented Losses above, a Settlement Class Member may elect to receive Cash Payment B – Flat Cash, which is a flat cash payment in an estimated amount of $100.00. *Id.* ¶ 74(b). For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payments. *Id.* ¶ 75.

### c. *Credit Monitoring*

In addition to electing Cash Payment A or Cash Payment B, Settlement Class Members may elect to receive three years of Credit Monitoring. The Credit Monitoring

6

will include: (i) real time monitoring of the Settlement Class Member's credit file at three bureaus; (ii) dark web scanning with immediate notification of potential misuse; (iii) comprehensive public record monitoring; (iv) medical identity monitoring; (v) identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolves instances of theft.

### d. California Statutory Payment

In addition to Cash Payment A or Cash Payment B and Credit Monitoring, California Settlement Class Members may also elect to receive a California Statutory Payment, which is a flat cash payment in an estimated amount of $50.00. *Id.* ¶ 74(c).

The Parties negotiated the Settlement Benefits (and structure) as fair compensation by discussing the type of personal information allegedly collected and shared, and the amount of alleged damages this sharing caused Class Members. Here, the benefits to the Class outweigh the risks, time delay, and net expected value of continued litigation. *Six v. LoanCare, LLC*, No. 5:21-cv-451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022).

### 3. Administration of Notice and Claims

The Parties have agreed in the Settlement Agreement that Class Counsel will engage Verita to act as the Settlement Administrator to oversee the administration of the Settlement. *Id.* ¶ 61. Notice will be given to the Settlement Class via individual notice, via email for all Class Members for whom Defendant has a valid email address, and Postcard Notice via US Mail. *Id.* ¶ 81(c).

The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out of or object

to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). A Settlement Website will be established and administered by the Settlement Administrator, and shall contain information about the Settlement, including electronic copies of Exhibits 1 through 4 to the Settlement Agreement (or any forms of these notices that are approved by the Court), the Settlement Agreement, and all Court documents related to the Settlement. *Id.* ¶ 67. The Settlement Website is viewed as an important piece of the notice plan to Class Members. Furthermore, a toll-free help line shall be made available to provide Settlement Class Members with information relevant to this Settlement. *Id*. ¶ 81(g).

### 4. Exclusions and Objections

The Long Form Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a request for exclusion to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. S.A. ¶¶ 86, Ex. C. The proposed Opt-Out Period is the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing. *Id*. ¶ 49. The request for exclusion must contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id*., ¶ 86. Any Settlement Class Member who does not file a timely request for exclusion will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement. *Id*.

The Notice shall also explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by filing written objections with the Court and mailing

the Objection to Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id.*, ¶ 87. The proposed deadline to Object to the Settlement is also 30 days prior to the Final Approval Hearing. *Id.* ¶ 48. A written objection must set forth: (i) the objector's full name, mailing address, telephone number, and email address (if any); (ii) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (iii) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (iv) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (v) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (vi) the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing; (vii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (viii) a statement confirming whether the objector intends

to personally appear and/or testify at the Final Approval Hearing; and (ix) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 88.

### 5. Attorneys' Fees, Expenses, and Service Awards to Class Representatives

The Parties did not discuss attorneys' fees or service awards until after the Settlement Fund amount was set. The Settlement Agreement contemplates that Plaintiffs will move the Court for an award of attorneys' fees not to exceed 33.33% of the non-reversionary fund, or $849,915, plus reimbursement of costs and expenses. S.A., ¶ 108. Plaintiffs will also move the Court for reasonable service awards of $2,500 per Class Representative, in recognition of their efforts on behalf of the Class. *Id*. ¶ 107.

### D. Final Approval Hearing

If the proposed Settlement Class is certified and the Settlement preliminarily approved, Plaintiffs respectfully request that the Court set a Final Approval Hearing within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Date; and at least 90 days after the Settlement Administrator notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

### III. LEGAL STANDARDS FOR PRELIMINARY APPROVAL, CONDITIONAL CLASS CERTIFICATION, AND APPROVAL OF THE NOTICE FORM.

### A. Preliminary Approval of Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed settlement of claims brought on behalf of a class. *See* Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may

be settled . . . only with the court's approval."). Courts may approve a proposed class settlement upon a "finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assist the Court, Rule 23(e)(1)(A) requires the parties to "provide the Court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Courts in the Fourth Circuit follow a bifurcated approach to determine whether a settlement is "fair, reasonable, and adequate" under Rule 23. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

First, at the preliminary approval stage, the court determines whether the proposed Settlement is "within the range of possible approval" or, whether there is "probable cause" to give notice of the proposed Settlement to class members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). The primary issue before the Court is whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate. *Matthews v. Cloud 10 Corp.*, No. 14-00646, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015).

The Fourth Circuit has laid out a series of factors for courts to consider when determining whether a proposed settlement is fair and adequate and, thereby, reasonable. *Jiffy Lube*, 927 F.2d at 159. To determine the fairness of a proposed Settlement, the Court considers: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation. *Id*. There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*,

11

No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted). To determine the adequacy of a proposed Settlement, the Court considers: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement."). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011) (citation omitted).

## B. Conditional Class Certification

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.*, No. 5:13-CV-447-FL, 2014 WL 12546373, at *2 (E.D.N.C. Dec. 24, 2014) (citation omitted). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but must analyze whether the other requirements for certification must have been satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar, Inc. Sec. Litig.*, No. 1:14CV885, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015). The Settlement Class must also satisfy one of the categories of Rule 23(b). *Id.* However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *See Amchem*, 521 U.S. at 620.

## C. Notice Form Approval

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may

exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

## IV. ARGUMENT

The proposed Settlement warrants preliminary approval. Evaluation under the enumerated *Jiffy Lube* and Rule 23 factors set out above confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should grant preliminary approval and issue notice of the Settlement to the Settlement Class.

### A. The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries.

Further, Class Counsel has the experience and qualifications to lead this litigation, and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Plaintiffs' Unopposed Motion to Appoint Interim Class Counsel [ECF No. 31] and firm resumes attached as exhibits thereto; *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

**B.  The Proposed Settlement Was Negotiated at Arm's Length.**

The Court should be able to safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself and the length and difficulty of the negotiations. *See In re NeuStar*, 2015 WL 5674798, at *10 (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to finally approve the Settlement.

**C.  The Relief is Fair, Reasonable, and Adequate.**

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). The Settlement establishes a $2,550,000 non-reversionary common fund from which Settlement Class Members are entitled to make a claim for a *pro rata* share of the Settlement Fund or documented losses, and credit monitoring. California Class Members may also make a claim for a California Statutory Payment, in recognition of California's consumer protection statutes.

Class Counsel, a group with a wealth of experience in leading major data privacy class actions, strongly believe that the relief is fair, reasonable, and adequate. Counsel Dec., ¶ 7. The Court may rely upon such experienced counsel's judgment. *See*, *e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.")

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Fed. R. Civ. P 23(e)(2).

## 1. The costs, risk, and delay of trial and appeal.

Plaintiffs believe that their claims are viable and that Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiffs pled in their operative complaint. While Plaintiffs believe they have strong claims and would prevail, success is not guaranteed. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain — especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.") (citation omitted).

While Plaintiffs have arguments and authorities that can support their allegations, the number of issues in this case, which center on a developing area of law—data breach litigation—create significant uncertainty. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Additionally, there are inherent risks associated with taking any novel class action to trial, including pre-trial risks of obtaining class certification and defeating summary judgment. Even if class certification is obtained and Plaintiffs are successful at trial, or, alternatively, if Octapharma obtains summary judgment, Octapharma or Plaintiffs would likely appeal, causing further delay and raising expenses. The Settlement allows for Class

Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits.

Moreover, the complexity, length, and expense of further litigation favors settlement now. Continued litigation would likely involve costly discovery involving experts regarding damages, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. Litigating this case to a favorable conclusion will require a considerable amount of time and resources and weighs in favor of accepting the Settlement now. *See In re Peanut Farmers Antitrust Litig.*, No. 2:19-CV-00463, 2021 WL 3174247 (ED. Va. Aug. 10, 2021). This factor also weighs in favor of preliminary approval. Thus, given the risks Plaintiffs face going forward, the amount offered in Settlement—both monetary and non-monetary—is well-balanced against the hurdles Plaintiffs will have to overcome to find success later down the road.

### 2. The method of distributing relief is effective.

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled. Because Settlement Class Members may make claims through a simple online form or by mail, the method of distributing the relief is both efficient and effective.

### 3. The terms relating to attorneys' fees are reasonable.

Class Counsel will request an award of attorneys' fees not to exceed 33.33% of the Settlement Fund, or $849,915, and reasonable litigation expenses. Under the Settlement

Agreement, Plaintiffs' request for Attorneys' Fees and Expenses must be filed with the Court at least 15 days before the Objection Deadline and Opt-Out Date. The ultimate fee award will be determined in the discretion of the Court following an application to the Court based on Fourth Circuit law and with the opportunity for comment from Settlement Class Members. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award.

Class Counsel will request service awards of $2,500 for each of the named Plaintiffs. Service awards of this size are reasonable. *See In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*, No. 1:15-md-2627 (AJT/TRJ), 2020 WL 5757504, at *3 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000). The Settlement Agreement is not conditioned on the Court's approval of this request.

### 4. Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no additional agreements.

### 5. The Proposed Settlement Treats Class Members Equitably.

Finally, the proposed Settlement treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for benefits from the Settlement Fund. There is no cap on the total number of claims, meaning that no Class Member will obtain any greater relative benefit over another. Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude

themselves from the Settlement. The only distinction in treatment of Settlement Class Members is that named Plaintiffs will each be seeking a $2,500 award for their services on behalf of the Settlement Class, however, this amount is less than the amount that any individual Settlement Class Member may claim as reimbursement for documented losses. This factor also supports approval.

### D. The Class Should Be Conditionally Certified for Settlement Purposes.

When presented with a settlement-only class, a district court must determine whether a class meets the requirements of Federal Rules 23(a) and 23(b)(2) or 23(b)(3)— save for evaluation of any class manageability issues at trial. *Amchem*, 521 U.S. at 591, 617, 620. Settlement classes are routinely certified in similar cases dealing with consumer data privacy.[5] There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

#### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

---

[5] *See, e.g., In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19md2915 (AJT/JFA)*, Doc. 118 (E.D. Va. Feb. 7, 2022); *Abubaker v. Dominion Dental USA, Inc*., No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert. denied sub nom. *Watkins v. Spector*, No. 21-638, 142 S.Ct. 765 (U.S. 2022); *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299 (N.D. Cal. 2018).

### a. Numerosity

Rule 23(a)(1) demands evidence that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No set minimum number of potential class members is required to fulfill the numerosity requirement. *Sanchez-Rodriguez v. Jackson's Farming Co. of Autryville*, No. 7:16-CV-28-D, 2017 WL 396667, at *2 (E.D.N.C. Jan. 27, 2017). Here, the proposed Settlement Class satisfies numerosity because the Settlement Class contains approximately 271,655 Class Members.

### b. Commonality

The Settlement Class meets Rule 23's "commonality" requirement because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "liberally construed . . . a class action will not be defeated solely because there are some factual variations among the members' grievances." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995). Commonality "does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist." *Id.* With respect to commonality, "[w]hat matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). Here, all Settlement Class Members were allegedly impacted by the same Data Incident and are asserting the same legal claims. These raise a number of common questions, including but not limited to:

a. Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

c. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information it obtained in the ordinary course of business; and

d. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's alleged wrongful conduct.

These common questions, and others alleged by Plaintiffs in their operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23. Accordingly, common questions of law and fact abound. *See*, *e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Anthem*, 327 F.R.D. at 309.

### c. Typicality

Class Representatives for the Settlement Class fulfill Rule 23(a)'s "typicality" requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement does not require the Class Representatives to have identical facts and legal claims as the class; rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Class Representatives'] proof of [their] own individual claim[s]." *Beaulieu v. EQ Indus. Servs., Inc*., No. 5:06-CV-00400BR, 2009 WL 2208131, at *13 (E.D.N.C. July 22, 2009). For typicality to be satisfied, the

"representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "Generally, the court must determine whether the asserted claims 'arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" *Beaulieu,* 2009 WL 2208131, at *13 (citing *Rodger*, 160 F.R.D. at 538).

This requirement is readily satisfied in cases like this one. The legal and factual arguments that the Plaintiffs representing the Settlement Class advance are the same arguments that other Settlement Class Members would advance in support of their claims. In this case, "[b]ecause the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 339 (4th Cir. 2006) (Michael, J., dissenting).

### d. Adequate Representation

Plaintiffs meet Rule 23(a)(4)'s adequacy requirement because Class Representatives have "common interests with unnamed members of the class" and "vigorously prosecute[d] the interests of the class through qualified counsel." *Beaulieu*, 2009 WL 2208131, at *15 (citing *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007)). Here, the interests of the Class Representatives fully align with the members of the Settlement Class. As discussed above, Plaintiffs are prosecuting the same claims as the Settlement Class, and these claims arise out of the same course of conduct by Octapharma, and rest on the same legal theory – whether Octapharma owed Plaintiffs and Class Members a duty to adequately protect their Private

Information and whether it breached those duties. The Class Representatives have also demonstrated their commitment to monitor and supervise the prosecution of the case on behalf of the Settlement Class.

Furthermore, the Class Representatives have protected the interests of the Settlement Class by retaining qualified, experienced counsel to represent the Settlement Class. Class Counsel have litigated this case vigorously. Counsel Dec., ¶ 22. Class Counsel are nationally recognized for prosecuting large, complex class actions, and have effectively represented numerous plaintiffs in many other data privacy class actions. *Id*., ¶ 7; *See also* Plaintiffs' Unopposed Motion to Appoint Interim Class Counsel [ECF 31] and firm resumes attached as exhibits thereto. Thus, per Rule 23, Class Representatives and Class Counsel provide adequate representation of the Settlement Class.

### e. Ascertainability

Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Production Co. v. Adair*, 764 F.3d 247, 358 (4th Cir. 2014). A proposed class representative "need not be able to identify every class member at the time of certification." *Id*. "[E]xtensive and individualized fact-finding" or "mini-trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Here, Defendant identified each member of the Class and sent them notice of the Data Incident, and Defendant has agreed to provide this information to the Settlement Administrator, who will also use industry standard practices to determine updated addresses for Settlement Class

Members whose contact information may have changed in the time since they provided it to Defendant.

### 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Because the Settlement Class seeks to recover damages, the Court must also determine whether the Class complies with the commonality and superiority requirements of Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

### a. Common Questions of Law and Fact Predominate.

The Settlement Class satisfies the predominance inquiry because the "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Beaulieu*, 2009 WL 2208131, at *20 (citing *Amchem*, 521 U.S. at 623). "The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 89-90 (E.D.N.C. 2009) (internal citation omitted); *accord McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 478 (E.D.N.C. 2010) ("common evidence . . . would establish a prima facie case for the class.").

Here, the numerous questions common to the Class, including those listed above, demonstrate commonality within the meaning of the statute, and predominate over any individual issues. The key elements of Plaintiffs' claims—whether Defendant owed a legal duty to adequately safeguard Plaintiffs' and Class Members' Private Information, whether that duty was breached, and whether Plaintiffs and Class Members are entitled to compensation as a result of that potential breach—are common issues, and thus the class is

"sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623.

### b. Class Resolution of this Action is Superior to Other Methods of Adjudication.

Litigating the same claims of approximately 272,000 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Anthem*, 327 F.R.D. at 315-16. This case also presents a disincentive to pursue individual lawsuits because the prospect of small individual recoveries is dwarfed by the cost of litigation. Accordingly, class treatment is undeniably superior to individual adjudications.

## V. PLAINTIFFS' NOTICE FORM AND PLAN SATISFY THE REQUIREMENTS OF THIS COURT.

As outlined above, the Notice provided satisfies Rule 23 requirements. The proposed Notices (Exhibits 1-3 to the Settlement Agreement) provide clear and accurate information as to: (1) a summary of the complaint and the nature and principal terms of the Settlement; (2) the definitions of the Settlement Class; (3) the procedures and deadlines for opting-out of the proposed Settlement or submitting objections and the date, time and place of the Final Approval Hearing; and (4) the consequences of taking or foregoing the options available to Class Members. The proposed Notice informs Class Members of the attorneys' fees and costs that may be sought by proposed Class Counsel, pursuant to Fed. R. Civ. P. 23(h), and the identities and contact information for Class Counsel, Counsel for Defendant, and the Court. The Notice Program complies with the

standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, Manual Fourth § 21.311-21.312.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed Settlement Agreement pursuant to Fed. R. Civ. P. 23(c) and (e); (2) preliminarily and conditionally certify the proposed Settlement Class; (3) approve the proposed Class Notice; (4) preliminarily approve Class Counsel and Plaintiffs to represent the Settlement Class; and (5) schedule a Final Approval Hearing to consider final approval of the proposed Settlement, and approval of attorneys' fees, costs, and Service Awards.

DATED: July 18, 2025                                    Respectfully submitted,

                                                        *Interim Class Counsel*

                                                        */s/ Jean S. Martin*
                                                        Jean S. Martin (N.C. Bar No. 25703)
                                                        MORGAN & MORGAN COMPLEX
                                                        LITIGATION GROUP
                                                        201 N. Franklin Street, 7th Floor
                                                        Tampa, Florida 33602
                                                        Telephone: (813) 559-4908
                                                        Facsimile: (813) 223-5402
                                                        Email: jeanmartin@forthepeople.com

                                                        Daniel Srourian (*Admitted Pro Hac Vice*)
                                                        SROURIAN LAW FIRM, P.C.
                                                        3435 Wilshire Blvd. Suite 1710
                                                        Los Angeles, California 90010
                                                        Telephone: (213) 474-3800
                                                        Facsimile: (213) 471-4160
                                                        Email: daniel@slfla.com